# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO ANTONIO AMBRIZ,<br><br>            Petitioner,<br><br>      v.<br><br>GARY SWARTHOUT, Warden,<br><br>            Respondents. | No.  1:14-cv-00294-AWI-JLT (HC)<br><br>ORDER DENYING PETITIONER'S MOTION FOR STAY AND ABEYANCE<br><br>(Doc. #30) |

      On March 27, 2016, the Magistrate Judge issued a Findings and Recommendation ("F&R") which recommended the petition be denied on the merits.  After being granted multiple extensions of time, Petitioner did not file objections.  On July 10, 2016, Petitioner filed the instant motion for stay and abeyance.  The motion was entered on the Court's docket on August 11, 2016.[1]  However, prior to the docketing of the motion, on August 9, 2016, the Court adopted the F&R in full and denied the petition on the merits.  Given that the motion for stay was filed prior to entry of judgment under the mailbox rule, the Court will consider it.

      Petitioner's motion seeks to stay proceedings in order to present the following additional new claims: (1) There was insufficient evidence to support a gang enhancement in light of the California Supreme Court decision in *People v. Prunty*, 62 Cal.4th 59 (2015); (2) Defense counsel was ineffective in failing to adequately prepare for trial; (3) Defense counsel was ineffective in failing to seek a continuance of the trial in order to adequately prepare; (4) Defense counsel was ineffective in failing to investigate and present evidence of any kind; (5) Defense counsel was ineffective in failing to present testimony from a street gang expert to demonstrate the lack of

---

[1] Although the motion was entered on the Court's docket on August 11, 2016, pursuant to the mailbox rule the Court considers the motion filed on July 10, 2016, the date Petitioner signed the proof of service and presumably handed the motion to prison authorities for filing.  Houston v. Lack, 487 U.S. 166, 276 (1988).

1

gang evidence under *Prunty*; and (6) Appellate counsel was ineffective in failing to raise claims of ineffective assistance of trial counsel.

Because the original claims have since been denied on the merits, there are no claims to hold in abeyance at the present time. Given the claims raised in Petitioner's motion and the current status of the petition, the Court will construe the motion to stay as a motion to amend to include. Woods v. Carey, 525 F.3d 886, 888-90 (9th Cir. 2008). For the reasons discussed below, Petitioner fails to demonstrate good cause to amend.

## DISCUSSION

A petitioner may amend a petition for writ of habeas corpus once "as a matter of course," and without leave of Court, within 21 of serving the petition or within 21 days of service of a pleading that is responsive to the petition. See Fed. R. Civ. P. 15(a)(1); 28 U.S.C. § 2242. Leave of Court or consent from the opposing party is required for all other amendments. Rule Civ. P. 15(a)(2). At the time Petitioner filed this motion, more than 21 days had passed since the petition was filed, more than 21 had passed since respondent filed an answer, and the F&R to deny all claims on the merits was pending. Respondent has not responded to the motion for stay, and there is no indication that Respondent consented to amendment. Therefore, pursuant to Rule 15(a), any amendment would only be permitted at the discretion of the Court.

In deciding whether to allow an amendment, the Court may consider "bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings." Calderon v. United States District Court, 144 F.3d 618, 620 (9th Cir. 1998); Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). As applied in this case, the factors do not favor amendment.

To begin, there has been undue delay in the presentation of these claims. The federal petition was filed on February 27, 2014, and was fully briefed by August 11, 2014. Petitioner did not alert the Court of the new claims until nearly two years later. Petitioner contends that his claims rely on new law as set forth in *Prunty*. However, *Prunty* was decided on August 27, 2015. Petitioner was aware of this decision at the latest on September 7, 2015, as demonstrated by his letter to the California Supreme Court. (See Petitioner's Motion for Stay, p. 25.) Moreover, he

1  knew of his potential *Prunty* claims well before then, given that on October 30, 2013, the
2  California Supreme Court denied his petition for writ of habeas corpus "without prejudice to any
3  relief to which petitioner might be entitled after this court decides *People v. Prunty*, S210234."
4  (Id. at p. 61.)  Nevertheless, he delayed in notifying the Court of the existence of these claims and
5  in moving to amend his petition until July 10, 2016.  Also, as to several of his claims of
6  ineffective assistance, he knew or should have known the relevant facts at the time of trial.
7  Finally, Petitioner admits that he has not even commenced exhaustion of these additional new
8  claims in state court.  For all these reasons, Petitioner has unduly delayed in seeking to amend,
9  and the fact that he did not alert the Court until well after the Magistrate Judge had issued the
10 F&R suggests bad faith.

11     Second, amending the petition now to add new claims would prejudice Respondent.  The
12 original petition was already briefed, and a decision has already been rendered.

13     Third, any amendment would be futile.  The California Supreme Court denied the habeas
14 petition without prejudice to refiling once it rendered its decision in *Prunty*.  That decision
15 occurred on August 27, 2015.  If Petitioner were to return to the California Supreme Court now,
16 his petition would likely be denied as untimely, since in California, the general rule is that the
17 petition must be filed "as promptly as the circumstances allow. . . ."  In re Clark, 5 Cal.4th750,
18 765, fn. 5 (1993).  In addition, some of Petitioner's claims of ineffective assistance of counsel
19 appear to be meritless since *Prunty* was not decided until after Petitioner's trial had concluded.
20 Counsel cannot be faulted for failing to investigate claims which rely on a case that had not yet
21 been decided.

22     Likewise, there is no merit to Petitioner's claim that there was insufficient evidence of the
23 criminal street gang enhancement in light of *Prunty*.  The law on sufficiency of the evidence is
24 clearly established by the United States Supreme Court.  Pursuant to the United States Supreme
25 Court's holding in *Jackson v. Virginia*, 443 U.S. 307 (1979), the test on habeas review to
26 determine whether a factual finding is fairly supported by the record is as follows:

27  > "[W]hether, after viewing the evidence in the light most favorable to the
28  > prosecution, any rational trier of fact could have found the essential elements
    > of the crime beyond a reasonable doubt."

Id. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16. A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319). Only where no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.

Here, Petitioner was charged with a criminal street gang enhancement pursuant to Cal. Penal Code § 186.22. Penal Code § 186.22 imposes punishments on individuals who commit felonies "for the benefit of, at the direction of, or in association with any criminal street gang." A criminal street gang, in turn, is defined as any "ongoing organization, association, or group of three or more persons" that shares a common name or common identifying symbol; that has as one of its "primary activities" the commission of certain enumerated offenses; and "whose members individually or collectively" have committed or attempted to commit certain predicate offenses. Cal. Penal Code § 186.22(f). "To prove that a criminal street gang exists in accordance with these statutory provisions, the prosecution must demonstrate that the gang satisfies the separate elements of Cal. Penal Code § 186.22 and that the defendant sought to benefit that particular gang when committing the underlying felony." Prunty, 62 Cal.4th at 66–67.

In *Prunty*, the California Supreme Court held that the prosecution is required "to introduce evidence showing an associational or organizational connection that unites members of a putative criminal street gang." Id. at 67. "[W]here the prosecution's case positing the existence of a single 'criminal street gang' for purposes of section 186.22(f) turns on the existence and conduct of one or more gang subsets, then the prosecution must show some associational or organizational connection uniting those subsets." Id. at 71. The California Supreme Court determined that the

prosecution had failed to introduce specific evidence showing that certain subsets of the Norteno gang identified with the larger Norteno group, or that the Norteno subsets shared a connection with each other, or any other Norteno-identified subset, such that one subset's activities could be imputed to another subset. Id. at 69.

In this case, the prosecution introduced evidence of the Sureno criminal street gang through a gang expert. The expert noted that there were two main groups of gangs in Tulare County, the Northern criminal street gang also known as the Norteno or Norte gang, and the Southern criminal street gang also known as Sureno, Sur, or Southsider gang. (RT 967-68, 993.) The expert testified to the typical association of the Sureno gang, its activities, the manner of dress, certain identifying markings used by gang members, graffiti, and typical tattoos. (RT 967-94.) The prosecution then introduced evidence of three predicate offenses committed by Sureno gang members. (RT 1054-63.) The expert opined that the Sureno gang members in the Tulare County area associated with each other and assisted each other in committing acts in furtherance of the Sureno gang. (RT 1054-63.) The prosecution then introduced evidence of Petitioner and his co-defendants' gang membership. Noel Ambriz was an admitted Southerner gang member. (RT 1066.) He further admitted that clothing bearing the markings, colors, and styles of the Southerner gang were his. (RT 1067-70.)

As to Petitioner, in a past incident he was caught fighting with a rival Northern gang member. Petitioner was wearing all blue and was in the company of other Southern gang members. (RT 1072-73.) On another occasion, Petitioner got into a fight with another rival gang member. (RT 1074.) Gang slurs were exchanged, and Petitioner exhibited three Southerner gang signs. (RT 1074-75.) Petitioner was in the company of another Southerner gang member. (RT 1075.) Another gang member had stated Petitioner associated with the Southerners. (RT 1076.) Petitioner also admitted to Sureno or Southerner gang affiliation and stated he had been a Sureno since 2005. (RT 1077.) Petitioner had a tattoo of 3 dots on his left hand which reflected association with the Southerners. (RT 1078.)

Juan Ramirez wore blue clothes, shoes, and belts, which were typical of the manner of dress of a Sureno gang member. (RT 1081-82.) He was found in possession of a notebook which

1  contained markings showing Sureno association. (RT 1083, 1086.) He also admitted that he was
2  a Southerner. (RT 1085-87.)
3      In addition to the above, evidence was introduced showing that Petitioner and his co-
4  defendants committed the underlying crime in order to promote the Southerner gang. (RT 1094-
5  1103.)
6      In light of the evidence, the concerns in *Prunty* are not at issue in this case. Criminal
7  incidents by subset groups were not relied on and imputed to another subset. Rather, the evidence
8  concerned the activities of the Sureno or Southerner gang as that was the gang in the area, and
9  Petitioner and his co-defendants represented they were members of the Southerner gang. The
10 evidence showed that "the 'criminal street gang' the prosecution prove[d] to exist" is "the same
11 gang that [Petitioner] sought to benefit (or which directed or associated with [Petitioner] in
12 connection with the crime." Prunty, 62 Cal.4th at 80-81. Therefore, a reasonable trier of fact
13 could have concluded that Petitioner committed the crime for the benefit of, or in association
14 with, the Sureno (Southerner) criminal street gang, and that he intended to assist, further, or
15 promote criminal conduct by Sureno gang members. Thus, amendment to allege "*Prunty* errors"
16 would be futile.
17     In sum, given the undue delay, prejudice to the opposing party, and futility of the
18 amendment, Petitioner's motion to amend must be denied. Bonin, 59 F.3d at 844-45.

## ORDER

Accordingly, IT IS HEREBY ORDERED that Petitioner's motion to amend/stay (Doc. No. 30) is DENIED.

IT IS SO ORDERED.

Dated:   February 8, 2017                    _____
                                             SENIOR DISTRICT JUDGE